811 A.2d 474 (2002)
356 N.J. Super. 26
Rickie SIMPKINS, Plaintiff-Appellant,
v.
Adolfo SAIANI, Defendant-Respondent, and
Manuel R. Santos and State Farm Insurance Co., Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 2002.
Decided December 11, 2002.
*475 Kirsch, Gelband & Stone, Newark, for appellant (Gregg Alan Stone, on the brief).
Respondent did not file a brief.
David Samson, Attorney General, attorney for amicus curiae Administrative Office of the Courts (Patrick DeAlmeida, Deputy Attorney General, of counsel; Pamela E. Gellert, Deputy Attorney General, on the brief).
Before Judges WEFING, LISA and FUENTES.
The opinion of the court was delivered by
LISA, J.A.D.
This appeal requires us to interpret the meaning of the term "net proceeds" in N.J.S.A. 2A:17-56.23b, enacted on August 14, 2000. L. 2000, c. 81. The statute provides that a docketed child support judgment constitutes a lien against the net proceeds of any recovery by way of settlement, judgment or arbitration award arising out of a civil claim, or an inheritance or a workers' compensation award. N.J.S.A. 2A:17-56.23b(a). "Net proceeds" is defined in the statute to mean "any amount of money in excess of $2,000, payable to *476 the prevailing party or beneficiary after attorney fees, witness fees, court costs, fees for health care providers, [and other similar costs]," which we will refer to collectively as "litigation costs." Ibid.
The trial court determined that because the amount plaintiff is entitled to receive out of his personal injury settlement after litigation costs exceeds $2,000, the entire amount he would receive is subject to the lien. We disagree and reverse. We hold that only the amount of plaintiff's settlement after litigation costs which exceeds $2,000 is subject to the lien imposed by N.J.S.A. 2A:17-56.23b.
Plaintiff authorized his attorney to settle his personal injury lawsuit against defendants for $7,500. Against that gross recovery, litigation costs totaling $3,353.92[1] were applicable, thereby entitling plaintiff to receive $4,146.08. As required by N.J.S.A. 2A:17-56.23b(b)(2), plaintiff's counsel held the settlement proceeds and ordered a child support judgment search. The search revealed two child support judgments docketed against plaintiff totaling $9,271.53. Pursuant to N.J.S.A. 2A:17-56.23b(c), plaintiff's counsel contacted the Probation Division and tendered $2,146.08. The Probation Division demanded the entire $4,146.08.
Plaintiff filed a motion for distribution, on notice to the county probation division and the Probation Services Division of the Administrative Office of the Courts (AOC). The AOC cross-moved for leave to appear as amicus curiae in the motion for distribution proceeding because of its role as the entity responsible, on a statewide basis, for collecting and distributing child support payments and enforcing child support judgments and because of the public importance attached to this statutory interpretation. See R. 1:13-9. Without opposition, the motion was granted, and the AOC participated in the trial court and before us.
In pertinent part, N.J.S.A. 2A:17-56.23b provides:
a. A judgment for child support ... docketed with the Clerk of the Superior Court shall be a lien against the net proceeds of any settlement negotiated prior or subsequent to the filing of a lawsuit, civil judgment, civil arbitration award, inheritance or workers' compensation award.... The lien shall stay the distribution of the net proceeds to the prevailing party or beneficiary until the child support judgment is satisfied.
As used in this act "net proceeds" means any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after [litigation costs].
....
c. If the [child support search] certification shows that the prevailing party or beneficiary is a child support judgment debtor, the attorney ... that initiated the search shall contact the Probation Division of the Superior Court to arrange for the satisfaction of the child support judgment. The attorney ... shall notify the prevailing party or beneficiary of the intent to satisfy the child support judgment prior to the disbursement of any funds to the prevailing party or beneficiary. Upon receipt of a warrant of satisfaction for the child support judgment, the attorney ... shall pay the balance of the settlement ... to the prevailing party or beneficiary. If the net proceeds are less than the amount of the child support judgment, the entire amount of the net proceeds shall be paid to the Probation Division as partial satisfaction of the judgment.

*477 [Emphasis added.]
Plaintiff argues that the plain language of N.J.S.A. 2A:17-56.23b exempts the first $2,000 of the amount he is entitled to recover from his settlement after litigation costs from the lien imposed by the statute. The AOC argues that the $2,000 is a "threshold" amount which "triggers" the search provisions of the statute. It argues that when a party is entitled, after deduction of litigation costs, to receive in excess of $2,000, a child support judgment search is required. However, the automatic lien of N.J.S.A. 2A:17-56.23b applies to the full amount to which the party is entitled, not only that which exceeds $2,000. Conversely, where the party is entitled to recover $2,000 or less after deduction of litigation costs, no search is required. Where there is no search, of course, there is no lien and no payment against the child support judgment.
Thus it is the AOC's position that the term "net proceeds" establishes a threshold, not an exemption. It supports this argument by contending the term "net proceeds" is subject to conflicting interpretations. The AOC urges the rules of statutory construction lead to the conclusion that the Legislature intended this remedial legislation to be construed liberally to best achieve the purpose of the statute, payment of child support debts, by compelling the maximum amount possible to be applied to satisfaction of such debts. The trial court agreed with this argument and ordered payment of the entire $4,146.08 towards plaintiff's child support obligations.
The initial step in statutory construction is to look at the language of the statute. "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). However, if the statute is not clear and unambiguous on its face, we consider "extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent." Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323, 744 A.2d 175 (2000) (quoting Township of Pennsauken v. Schad, 160 N.J. 156, 170, 733 A.2d 1159 (1999)). We should also consider the policy underlying the statute. County of Monmouth v. Wissell, 68 N.J. 35, 43-44, 342 A.2d 199 (1975).
We first look at the words of the statute. Insertion of the definition of "net proceeds" into the substantive provision results in the following: "A judgment for child support ... shall be a lien against [any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after [litigation costs]] [out] of any settlement...." This resulting provision can mean only one thing: The automatic lien imposed by N.J.S.A. 2A:17-56.23b is against only that portion of a party's settlement, after deduction of litigation costs, which exceeds $2,000. The lien simply does not apply to the first $2,000.
The AOC asserts an ambiguity in the meaning of the term "net proceeds." It contends a plausible alternate meaning is that the term establishes a threshold which triggers the search requirements of the statute. However, the AOC fails to explain how the words of the statute can be read to convey the meaning it urges. In actuality, this urged construction is an attempt to rewrite the statute. Although we are confident about the statute's true meaning, we will look beyond its plain language to verify the Legislature's intent. State v. Butler, supra, 89 N.J. at 227, 445 A.2d 399. We are mindful that in some instances literal wording must give way to clearly stated legislative intent. See Fiore *478 v. Consolidated Freightways, 140 N.J. 452, 466, 659 A.2d 436 (1995).
We first consider the statute's internal structure. "[A] word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary." Perez v. Pantasote, Inc., 95 N.J. 105, 116, 469 A.2d 22 (1984). The term "net proceeds" is used frequently throughout this lengthy statute. For example, the lien imposed by the statute establishes a stay of the distribution of the net proceeds to the prevailing party or beneficiary until the child support judgment is satisfied, N.J.S.A. 2A:17-56.23b(a); before disbursing any net proceeds of a settlement, the prevailing party's attorney must initiate a child support judgment search, N.J.S.A. 2A:17-56.23b(b)(2); if net proceeds are payable through a structured settlement or other payment plan, special provisions apply, N.J.S.A. 2A:17-56.23b(b); if the net proceeds are less than the amount of the child support judgment, the entire net proceeds shall be paid in partial satisfaction, N.J.S.A. 2A:17-56.23b(c); an attorney, insurance company or agent shall not be liable for distributing the net proceeds to the prevailing party based on a negative search if the prevailing party provided inaccurate personal information, N.J.S.A. 2A:17-56.23b(d); an attorney, insurance company or agent who satisfies a judgment from the net proceeds shall not be liable for other payments required by the statute which were not identified at the time of satisfaction, N.J.S.A. 2A:17-56.23b(e); an attorney, insurance company or agent who satisfies a judgment from the net proceeds shall not be liable to the prevailing party or that party's creditors, N.J.S.A. 2A:17-56.23b(f). And, of course, the term is used in the substantive provision stating a child support judgment shall be a lien against the net proceeds, N.J.S.A. 2A:17-56.23b(a).
The AOC asks that we interpret "net proceeds" in one passage only, namely N.J.S.A. 2A:17-56.23b(b)(2) (requiring the prevailing party's attorney to initiate a child support judgment search), to comport with the statute's plain language. In the many other passages, the AOC would have us ignore the definition of "net proceeds" contained within the statute, and instead adopt a contrary meaning, namely the entire proceeds available to the prevailing party after deduction of litigation costs. This we decline to do. Where the Legislature has clearly and explicitly defined a term within a statute, we must assume it did so intentionally and with the intent that its stated definition be applied to that term throughout the statute. Perez v. Pantasote, Inc., supra, 95 N.J. at 116, 469 A.2d 22.
The main thrust of the AOC's argument is that the purpose of this enactment is to enhance collection of delinquent child support obligations, and by requiring maximum possible payments towards those obligations the legislative purpose will be better fulfilled. In the abstract, this proposition seems persuasive. However, the proposition must be evaluated in the context of the statutory language. In an effort to explain the presence of the $2,000 "threshold" in the statute, the AOC suggests the Legislature may have deemed it appropriate "to exclude the voluminous amount of cases and settlements subject to the jurisdiction of the Small Claims Court from the search requirements." This is particularly noteworthy because of the large number of pro se litigants in the Small Claims Court who would be burdened by the cumbersome search requirements.
We do not find this argument persuasive. The Legislature considered and addressed the concern for pro se litigants to the fullest extent possible. If the prevailing *479 party is not represented by an attorney, the search shall be initiated by the opposing attorney, insurance company or agent before distribution. N.J.S.A. 2A:17-56.23b(b). If neither party to a lawsuit is represented by an attorney, the party bringing the lawsuit shall initiate the search and file the certification with the court at least ten days before trial or at the time of settlement or dismissal of the lawsuit. Ibid.
In any event, the concern expressed by the AOC regarding small recoveries is equally served by an interpretation rendering the first $2,000 not subject to the lien. Because the amount the prevailing party is entitled to receive after deduction of litigation costs (i.e. the "net proceeds") is $2,000 or less, there would be no lien and therefore no need for a search. The result is the same. The presumed policy underlying the statute is achieved.
In adopting N.J.S.A. 2A:17-56.23b, the Legislature repealed its predecessor, N.J.S.A. 2A:17-56.37. L. 2000, c. 81, § 4. The repealed statute, in effect since May 4, 1996, dealt only with civil lawsuits, and required the court to order a thirty-day hold on disbursement of "any monies due to that person," after deduction of attorney fees and other specified litigation expenses. N.J.S.A. 2A:17-56.37a(2) (repealed) (emphasis added). During the thirty-day period, the burden was on the probation department to ascertain whether the recovering party owed child support arrearages. N.J.S.A. 2A:17-56.37b (repealed). If so, "any monies remaining out of the award or settlement which represent child support arrearages" would be paid over to probation. Ibid, (emphasis added). If the probation department did not issue a notice of arrearages within thirty days, disbursement could be made to the recovering party.
The AOC relies upon the portion of the current statute which provides that upon receiving a positive child support judgment search the attorney must notify the prevailing party or beneficiary of the intent to satisfy it "prior to disbursement of any funds" and upon receipt of a warrant of satisfaction of the child support judgment the attorney may "pay the balance of the settlement" to the prevailing party or beneficiary. N.J.S.A. 2A:17-56.23b(c) (emphasis added). According to the AOC, "this language further evidences the Legislature's intent to provide maximum payment of support judgments." We find this unpersuasive because the quoted provision is immediately followed by a provision that "[i]f the net proceeds are less than the amount of the child support judgment, the entire amount of the net proceeds shall be paid to the Probation Division as partial satisfaction of the judgment." Ibid, (emphasis added). The latter provision expresses the substantive obligation for compliance with the lien requirement imposed by this statute. In this context, the former provision is procedural or directory in nature.
The Legislature previously had in place a scheme which subjected all sums due to a prevailing civil litigant to payment of child support arrearages. It made a conscious change in that system in several ways. The new statute, N.J.S.A. 2A:17-56.23b, is broader in scope, applying to inheritances and workers' compensation recoveries as well as civil judgments, settlements and arbitration awards. It places the burden on attorneys, insurance companies, agents, and in some instances, pro se litigants, to search for child support judgments. It pertains to docketed child support judgments, rather than arrearages. It impresses a lien for such judgments against the "net proceeds" of a recovery or award. It defines "net proceeds" as any amount in excess of $2,000.
*480 If it chose, the Legislature could have retained the feature of the earlier system that made all sums due to the recovering party subject to the lien. It chose otherwise. The legislative history accompanying the passage of N.J.S.A. 2A:17-56.23b does not reveal any intended meaning of the term "net proceeds" other than that clearly expressed in the statute, nor does it contain any express purpose for its formulation of the definition. See Committee Statement, Senate Women's Issues, Children and Family Services Committee, Senate, No. 220-L. 2000, c. 81 (March 2, 2001); Committee Statement, Assembly Senior Issues and Community Services Committee, Assembly, No. 1135 (March 2, 2001); Sponsor's Statement, Senate, No. 220; Sponsors' Statement, Assembly, No. 1135.
In the absence of expressions of intent by the Legislature, we consider probable intent. Fiore v. Consolidated Freightways, supra, 140 N.J. at 471, 659 A.2d 436 (citing Roig v. Kelsey, 135 N.J. 500, 515, 641 A.2d 248 (1994)). Under any interpretation, child support judgment debtors entitled to a recovery of $2,000 or less after deduction of litigation costs are obligated to pay nothing pursuant to the automatic lien imposed by N.J.S.A. 2A:17-56.23b. Therefore, it cannot be said that the Legislature intended that every dollar available from every prevailing party or beneficiary be automatically applied to child support arrearages. We do not find it logical that the Legislature intended a recovering party entitled to $2,001 after deduction of litigation expenses to be obligated to pay that entire amount towards child support arrearages, while a party entitled to $2,000 pay nothing. It is more logical that in two nearly identical situations the result would be nearly identical. We presume the Legislature intended to achieve a reasonable result. Lesniak v. Budzash, 133 N.J. 1, 14-15, 626 A.2d 1073 (1993). Courts should use common sense in interpreting statutes and avoid absurd results. Voges v. Borough of Tinton Falls, 268 N.J.Super. 279, 285, 633 A.2d 566 (App.Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994).
In revamping this statutory scheme and broadening its scope, we glean an intent by the Legislature to establish a $2,000 exemption for several salutary purposes. It eliminates the need for the cumbersome search procedure in small recovery cases. It enables the recovering party or beneficiary to retain some portion of a recovery or award for the injury or wrong that party has suffered or the inheritance to which the party is entitled. It provides an incentive to a party to pursue and settle a claim, regardless of the amount potentially recoverable. It provides a disincentive to manipulate the amount recoverable after deduction of litigation costs where that amount is approximately $2,000, or slightly more. The AOC points out that if the entire amount is paid to reduce child support arrearages, the recovering party nevertheless receives a benefit because of reduction of his legal obligation to satisfy the child support judgment against him. This is true. However, common sense and common experience dictate that the incentive is not as great as where the party is permitted to retain a portion of the recovery free of the automatic lien.
We emphasize that this entire discussion pertains to the automatic lien imposed by N.J.S.A. 2A:17-56.23b. That the first $2,000 is not subject to the automatic lien does not preclude the child support judgment creditor from seeking to recover some or all of that $2,000, upon a showing that such a recovery would be appropriate. Indeed, even where the net proceeds are $2,000 or less, the creditor, if aware of the *481 debtor's recovery, may seek to recover some or all of it.
We conclude the statute is clear and unambiguous on its face. The definition of "net proceeds" is plainly stated, and the usage of that term throughout the statute requires application of the stated definition throughout. There is no reading of the statute that accommodates the "threshold-trigger" interpretation advanced by the AOC. We are satisfied the plain language of the statute comports with the legislative intent and policy considerations. No clearly stated legislative intent exists to countermand the literal wording of the statute. If the Legislature wishes to establish a scheme as urged by the AOC, it may, of course, do so. We are convinced it has not done so in its enactment of N.J.S.A. 2A:17-56.23b.
Reversed.
NOTES
[1] These costs consisted of costs and investigation ($680.88), attorney fee ($2,273.04) and obligation to medical provider for missed appointments ($400).